IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JACQUELYN JOHNSON                                              PLAINTIFF

v.                                              CAUSE NO. 1:16CV304-LG-RHW

HUNTINGTON INGALLS, INC.                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Defendant's [27] Motion for Summary Judgment in this employment discrimination case. The issues have been fully briefed. After due consideration of the parties' submissions and the relevant law, it is the Court's opinion that there is no question of material fact for the jury. The Motion will be granted and Plaintiff's claims dismissed.

BACKGROUND

Johnson is a female African American who has been employed by Huntington Ingalls for almost three years as of this date. She filed this lawsuit pro se, alleging that she worked as a welding instructor from June 2014 to July 2015. When she complained about not receiving bonuses, she was reassigned to work in the shipyard. She alleges that males with less experience than her worked as instructors. She alleges Huntington Ingalls retaliated against her when it reassigned her to work in the shipyard, and also terminated her "in retaliation for providing testimony against the Defendant in a Title VII race discrimination lawsuit." (Compl. 4, ECF No. 1). She referred to Title VII and 42 U.S.C. § 1981 as bases for her claims.

In her February 18, 2016 Charge of Discrimination, Johnson stated:

> I am Black. I was hired by the Respondent on January 24, 2014 as a Welder. I believe I am being disciplined and harassed because of my race, (Black) and because I complained in June 2015 about not receiving a bonus.
>
> In June 2015 I filed a complaint with Edmond Hughes (Black, HR Director) in-regards to not receiving bonuses for recommendations. I believe I was denied a bonus in October 2014 due to my sex and race. In August 2015 I was sent to work in the yard. I believe that because of my race and sex I was sent to work in the yard as punishment for a complaint made regarding safety suggestions.
>
> In August 2015 male employees were allowed to become Instructors without having the welding experience I was told I needed in-order to work as an Instructor. I worked as an Instructor during the time period June 2014-July 2015.
>
> I have been retaliated and discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Def. Mot. Ex. 14, ECF No. 27-14). She alleges she received a notice of right to sue on May 19, 2016. (Compl. 3, ECF No. 1). Johnson timely filed this lawsuit within 90 days of receipt of the notice.

Johnson is now represented by counsel, who is "pursuing solely her claim of race discrimination and retaliation relating to the failure to pay her work leaderman's pay and the company's rule change that resulted in her involuntary transfer out of the training center." (Pl. Resp. 9 n. 2, ECF No. 33). Huntington Ingalls moves for summary judgment of these claims on the grounds that the Title VII claims are time-barred, and Johnson cannot show that she has a viable § 1981 race or retaliation claim.

DISCUSSION

1. **Title VII Claims**

"In order to file suit under Title VII, a plaintiff first must file a charge with the EEOC within 180 days of the alleged discriminatory act. And where a Title VII claim is based on "discrete discriminatory acts" – such as those alleged here – "[t]he charge . . . must be filed within the 180-[ ]day time period after the discrete discriminatory act occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 (5th Cir. 2010) (identifying "termination, failure to promote, denial of transfer, and refusal to hire" as "discrete acts"). This time period acts as a statute of limitation. *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999).

Johnson filed her charge with the EEOC on February 18, 2016, making the discrete acts that occurred prior to August 19, 2016, time-barred. All of Johnson's claims are based on discrete acts that occurred well before August 2016, and she agrees that her Title VII claims are untimely. Accordingly, the Title VII claims will be dismissed.

2. **Section 1981 Claims**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual

relationship." § 1981(b). The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

   *A. Section 1981 Race Discrimination*

To prevail under Section 1981, the plaintiff must prove a prima facie case of intentional racial discrimination.[1] *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997) (citation omitted). To establish a prima facie case of discrimination, Johnson must show: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) others outside the class who were similarly situated were treated more favorably. *See, e.g., Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2008) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)).

Huntington Ingalls assumes that Johnson satisfies the first two elements of her prima facie case of race-based discrimination and moves directly to the adverse employment action and more favorable treatment elements. The complained of employment action is that Johnson "was the only instructor denied leaderman's pay after obtaining First Class welder status." (Pl. Mem. 12-13, ECF No. 33). Actions affecting compensation are adverse employment actions for purposes of Title VII. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Nevertheless, Johnson provides no evidence supporting her argument that she was treated less

---

[1] Johnson's sex discrimination claims are not cognizable under § 1981. *See Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 345 (5th Cir. 1981).

favorably than others outside her race class, and her deposition testimony shows that she believed she did not receive work leaderman's pay because of her gender, if anything. (Johnson Dep. 128-30, 160, 191-92, ECF No. 27-1). In her affidavit Johnson does include her race among the reasons for the difference in pay. (Johnson Decl. 2-3, ECF No. 32). Nevertheless, Johnson's statements attest to her subjective opinion that race discrimination was a factor in Huntington Ingalls' pay decisions, and belief alone cannot constitute summary judgment evidence. *See Britt v. Grocers Supply Co., Inc.,* 978 F.2d 1441, 1451 (5th Cir. 1992); *Little v. Republic Ref. Co.,* 924 F.2d 93, 96 (5th Cir. 1991). "It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (citations omitted).

Additionally, Huntington Ingalls provides evidence that Johnson did not receive work leaderman pay for a reason unrelated to race, gender, or welder status; "she was not an instructor who was permanently assigned a crew of students to take through the entire training process." (Def. Mot. Ex. 9, at 2, ECF No. 27-9; *see also* Ex. 11, at 31, ECF No. 27-11). This responsibility included the possibility of failing a student and preventing him or her from continuing to work at Huntington Ingalls' shipyard. (Def. Mot. Ex. 2, at 40, ECF No. 27-2). Johnson testified that she had not exercised that authority. (Johnson Dep. 90, ECF No. 27-1). Huntington Ingalls' evidence shows that it did not consider her to be qualified to perform, or that she

was actually performing, work leaderman responsibilities. This is a legitimate, nondiscriminatory reason for not paying Johnson work leaderman wages. Johnson's evidence that she was an instructor performing instructor duties does not establish pretext, as Huntington Ingalls required more from its work leadermen. For these reasons, the Court finds that there is no question of material fact for the jury regarding Johnson's § 1981 racial discrimination claim. It will be dismissed.

*B. Section 1981 Retaliation*

Johnson claims she was retaliated against when she complained to Huntington Ingalls about not being paid work leaderman wages, and then was immediately transferred out of the training department. The elements of a § 1981 retaliation claim are (1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse action followed; and (3) a causal connection between the protected activities and the adverse action. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 390 (5th Cir. 2017). Simply complaining about wages is not a protected activity; Johnson must have evidence that she complained about being treated differently because of her race. *See Allen v. Envirogreen Landscape Prof'ls, Inc.*, No. 16-31247, 2017 WL 5891648, at *4, 5 (5th Cir. Nov. 28, 2017) ("Although Title VII prohibits racial discrimination with respect to compensation, compensation issues are not protected by Title VII when they do not allege discrimination based on race, color, religion, sex, or national origin.").

Johnson has submitted an affidavit in which she states that she was retaliated against because she complained to the vice-president over the human

resources department about race-based discrimination in her pay:

> I advised Mr. Hughes that I felt as though I was being discriminated against because I was an African-American female, and that I could see no other reason why my salary had not been increased in light of the instructor responsibilities I was performing. I told him I felt this way because I was [the] only African-American female on the night shift, and I was the only one going [sic] experiencing this problem.

(Johnson Decl. 3, ECF No. 32).

In her deposition, Johnson explained that she believed she had been reassigned because of her gender:

> Q. All right. But do you -- let me start over. Are you making any claim that it was due to your -- that your reassignment to the shipyard had anything to do with your gender or was it just in retaliation?
>
> A. I assume it was my gender, yes, sir.
>
> Q. Do you assume that your race had anything to do with it, the reassignment? I mean, because you say in retaliation in the complaint.

(Johnson Dep. 112, ECF No. 27-1).

Unfortunately, the next page containing Johnson's answer has not been provided to the Court.[2] Thus, the Court assumes Johnson's deposition testimony is consistent with the assertions in her affidavit – that she was retaliated against because she complained about a racial component to her pay.

Hughes, who is also African American, has provided an affidavit in which he states that he does not recall Johnson telling him she had been treated differently

---

[2] The practice of providing only select pages of a deposition makes it unnecessarily hard to extract information from the transcript, as it removes context and, as in this case, answers to germaine questions.

because of her race at either of their two meetings in June and July 2015. (Def. Reply Ex. 22, at 2, ECF No. 34-6). Hughes' contemporaneous notes, attached to his affidavit, include no mention of race, gender or pay issues. (Ex. A to Def. Reply Ex. 22, ECF No. 34-6).

Because the evidence conflicts on the question of whether Johnson engaged in a protected activity, the Court considers it established and moves on to the question of whether an adverse action followed. Johnson was transferred out of the training center in August 2015. She contends that Huntington Ingalls adopted new requirements for instructors that were "structured in such a way to ensure Johnson's departure." (Pl. Resp. Mem. 12, ECF No. 33). Huntington Ingalls contends that even if Johnson's transfer was an adverse action, its creation of more stringent requirements resulted from its new emphasis on providing "the best training possible" to craft employees, not a desire to remove her from her instructor position. (Def. Reply 6, ECF No. 34). Huntington Ingalls states that "[t]he requirements did indeed result in Johnson's transfer out of the training center – because she did not have the experience to satisfy them – but their creation had nothing to do with her." (*Id*.). Huntington Ingalls provides evidence that the new instructor requirements used to justify Johnson's transfer were developed in March 2015, months before Johnson allegedly complained to Hughes. (Def. Mot. Ex. 13, ECF No. 27-13). Thus, even assuming that Johnson has established the first two elements of a retaliation claim, she does not show evidence demonstrating a causal connection between her alleged protected activity (complaining to Hughes) and Huntington Ingalls' alleged

adverse action (transferring her out of her instructor position).  *See Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013).  To the contrary, the evidence shows that the impetus for Johnson's transfer was a policy change that took effect prior to Johnson's meeting with Hughes.  Since Johnson lacks any evidence that her complaint to Hughes caused Huntington Ingalls to transfer her, her retaliation claim should be dismissed.

CONCLUSION

The Court concludes that Johnson's Title VII claims are time-barred and dismisses them for that reason.  Johnson's claims of racial discrimination pursuant to 42 U.S.C. § 1981 are unsupported with competent summary judgment evidence and will therefore be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Defendant's [27] Motion for Summary Judgment is **GRANTED**.  Plaintiff's claims are dismissed.

**SO ORDERED AND ADJUDGED** this the 12th day of December, 2017.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE